GULOTTA, Judge.
Suit was instituted against Southern Scrap Materials, Inc., for the return of certain materials or the value thereof which plaintiff, Louisiana Power & Light Company, alleges were stolen from its Nine Mile Point Generation Station and subsequently purchased by defendant. The defendant answered and denied that it had purchased said materials belonging to plaintiff. Alternatively, defendant filed a third-party demand against Soloman Au-guillard, the alleged vendor of the merchandise, charging that if it be found guilty of purchasing the stolen ■ merchandise that Auguillard be held in indemnity.
Following a trial on the merits, judgment was rendered dismissing the principal and third-party demand. From that judgment plaintiff has prosecuted this appeal.
The issue for our determination is whether or not the facts sustain Louisiana Power & Light Company’s allegation that the subject materials allegedly stolen from it by a third party were subsequently purchased by Southern Scrap Materials Company.
A review of the evidence reveals that after returns were made on certain subpoenas duces tecum the first witness, George Adams, Vice President of Southern Scrap Materials Company, Ltd., identified sales slips showing purchases by Southern Scrap from Soloman Auguillard. Mr. Adams testified that the purchase slips identified only the type of metal purchased by Southern Scrap and, therefore, neither the exact source of the merchandise nor to whom that particular merchandise was subsequently sold could be determined. Mr. Adams testified that 537 pounds of yellow brass were purchased from Auguillard on September 2, 1964. On September 8, 820 pounds of yellow brass were purchased as well as 160 pounds of copper pipe. He testified further that on September 11, 1964, 106 additional pounds of yellow brass were purchased by Southern Scrap from Auguil-lard.
The next witness was Eno Joseph Bar-bier, Jr., of the sheriff’s office, Jefferson Parish, who investigated the alleged theft of merchandise from Louisiana Power & Light Company. Mr. Barbier stated he observed visible drag marks on the ground outside of but in close proximity to a hole *640 in a page fence surrounding Louisiana Power & Light Company indicating that materials were dragged from the yard. He stated further that there were brass fittings and copper rods in the yard similar to those items subject of the alleged theft. He testified that employees of Southern Scrap bought materials similar to those items identified as having been in Louisiana Power & Light Company’s yard.
Carl Giadrosich testified that he inventoried materials on the lot belonging to Louisiana Power & Light Company and found large quantities of brass fittings and rods were missing — items which were similar to the goods subject of these proceedings. He stated that he identified and recovered approximately 60 percent of the missing items from West Bank Material Company. He testified that he did not go to the Southern Scrap Company.
Joseph Green, an employee of Southern Scrap, testified that materials similar to those missing from the Louisiana Power & Light lot were purchased in September and October, 1964 by Southern Scrap and that similar materials were commonly purchased on many occasions. He could not, however, remember any particular purchases over an employment period of eleven years. He was able to identify some items as having been purchased from time to time, but others he could not identify.
The following witness was Soloman Au-guillard, an employee of Jefferson Parish Garbage District No. 2. He testified he sold items to Southern Scrap similar to those identified as missing from Louisiana Power & Light Company and obtained them from the Jefferson Parish dump. He stated he sold approximately one-half of a 55 gallon drum of .brass materials similar to the missing items. Witness, Giadrosich, after having been recalled, testified that in total approximately seven tons of materials were missing from Louisiana Power & Light Company.
George Adams was recalled and testified that brass and copper were purchased by Southern Scrap from Auguillard in February, 1964, along with other scrap material.
No evidence was submitted to indicate that any of the items allegedly subject of a theft or missing from Louisiana Power & Light Company were identifiable either through markings or in any other way as belonging to Louisiana Power & Light as distinguished from any other utility company. It is noteworthy that no evidence was presented to show that particular items identified as having been the property of Louisiana Power & Light Company were either traced to or found in the possession of the defendant, Southern Scrap, or were sold to Southern Scrap and disposed of by it at a subsequent time. Nor was there any showing that these items were specially manufactured exclusively for plaintiff or otherwise so unique that those purchased by defendant had to be the property of plaintiff. Furthermore, the testimony failed to reveal that the merchandise subject of the alleged theft from Louisiana Power & Light Company was seen on the grounds of Southern Scrap or could be identified as having been on the grounds of Southern Scrap. Therefore, we find that the plaintiff failed to carry the burden of showing by a preponderance of evidence that the missing or stolen merchandise of plaintiff ever came into the possession of the defendant, Southern Scrap.
Petitioner is correct in his contention that the purchaser of stolen property must return the stolen object or the value thereof to the rightful owner. Continental Casualty Company v. Ramon, La. App., 151 So.2d 526, 527; LSA-C.C. arts. 2293, 2301, 2311, 2312, 2313, 2452. Petitioner, however, must prove that Southern Scrap actually parchased such objects and an identification of the particular items of the defendant must be shown before restitution can be required. Clay v. Fisher, 2 Lá.Ann. 997; Dumesnil v. Steinberg, La. App., 129 So. 243. In the instant case necessary proof in this regard is woefully lacking.
*641 After reviewing the record we see no error by the trial court in finding that plaintiff failed to prove its case.
For the reasons discussed herein above, the judgment dismissing plaintiff’s suit is affirmed.
Affirmed.